UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BELLWETHER ENTERPRISE REAL ESTATE CAPITAL,<br>　　　　Plaintiff,<br><br>versus<br><br>CHRISTOPHER JAYE and KRISTI MORGAN,<br>　　　　Defendants. | CIVIL ACTION NO. 19-cv-10351 S (1)<br><br>JUDGE MARY ANN VIAL LEMMON<br><br>MAGISTRATE JUDGE JANIS VAN MEERVELD |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendants, Christopher Jaye and Kristi Morgan ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of plaintiff, Bellwether Enterprise Real Estate Capital ("Plaintiff" or "Bellwether").

## INTRODUCTION

Plaintiff's claim is barred by *res judicata* and claim preclusion. Plaintiff's claim is based on the same series of transactions and operative facts as a prior action involving the same parties or their privies, which was dismissed with prejudice on March 25, 2019, pursuant to a Stipulation of Dismissal with Prejudice. *See Broadmoor, LLC v. Mirus New Orleans, LLC, et al.*, No. 2:18-cv-09064, ECF. No. 30 (E.D. La. filed March 25, 2019). The prior action involved, in part, allegations that the Broadmoor defendants, including Bellwether, violated various duties owed to Broadmoor under a loan for a construction project made by Plaintiff to Mirus New Orleans, LLC ("Mirus"), which is owned by Defendants. As part of the loan transaction, Plaintiff and Mirus executed several loan documents, including an Extension Fee Agreement, which Defendants signed on behalf of Mirus and also as obligors. *See* Doc. 1, ¶10 (Extension Fee Agreement executed "in consideration for and as a condition of the Loan").

In the instant action, Plaintiff asserts a claim arising out of the same loan transaction (specifically, the Extension Fee Agreement), but does not name as a defendant Mirus, the principal obligor, who was a party to the prior action. Instead, Plaintiff names Defendants, individually, who were not named parties to the prior action. Fifth Circuit law estops this attempt to circumvent *res judicata* by enforcing claim preclusion when the parties in the instant action are in privity with a party to the prior action. Here, privity exists between Mirus and Defendants, who are owners of Mirus. Doc. 1, ¶¶7, 16. Further, in the prior action, the parties' Stipulation of Dismissal with Prejudice expressly reserved certain claims against Mirus for an unrelated party, but Plaintiff failed to reserve any claim to relief against Mirus. Plaintiff's instant claim is now barred. In sum, the instant action involves the same parties or their privies as the prior action, the Stipulation of Dismissal with Prejudice was rendered by a court of competent jurisdiction and constitutes a final judgment on the merits, and Plaintiff's instant claim is based upon the same series of transactions and operative facts underlying the prior action, and could have been asserted therein or expressly reserved, but was not. Plaintiff's claim is barred by claim preclusion on the face of its Complaint, and must be dismissed.

## BACKGROUND

Mirus is the owner of the Village of Versailles Project (the "Project"), which was funded, in part, by a commercial mortgage loan issued by Bellwether in early July, 2016 (the "Loan"). Doc. 1, ¶¶6–9. Mr. Jaye and Ms. Morgan are owners of Mirus. *Id.*, ¶16 ("The Obligors [Mr. Jaye and Ms. Morgan] are the individual owners of the Borrower entity [Mirus]."); *id.*, ¶7 ("At all relevant times, Obligors [Mr. Jaye and Ms. Morgan] have owned a directed or indirect interest in Borrower [Mirus] and stand to derive a substantial benefit from the Loan").

In connection with the Loan, Mirus and Bellwether executed several Loan documents, including a Mortgage Note, Doc. 1-2, and an Extension Fee Agreement, Doc. 1-1. *See* Doc. 1,

¶¶6–10. The Extension Fee Agreement was executed "in consideration for and as a condition of the Loan." Doc. 1, ¶10. The Mortgage Note and Extension Fee Agreement were both executed on or about July 1, 2016. *Id*. The Mortgage Note was executed by Ms. Morgan on behalf of Mirus. Doc. 1-2. The Extension Fee Agreement was executed by Mr. Jaye and Ms. Morgan on behalf of Mirus, and by each individually. Doc. 1-1. The Project financing was insured by the federal Department of Housing and Urban Development ("HUD") under Section 221(d)(4) of the National Housing Act, as amended. Doc. 1, ¶9.

Mirus hired Broadmoor as contractor to construct the improvements on the Project. Doc. 1, ¶15. A dispute arose among the parties regarding the Project, Project agreements, and Loan transaction documents, resulting in the Broadmoor Litigation.[1]

## I. THE BROADMOOR LITIGATION

### A. The Broadmoor Complaint and Pleadings

On September 28, 2018, Broadmoor filed a Complaint in the Broadmoor Litigation, which involved allegations and claims against related to the Project against Mirus, Bellwether, HUD, and CREA Corporate Tax Credit Fund 40, LLC ("CREA").[2]

As to Mirus, Broadmoor alleged that Mirus, in part, breached certain Project agreements by failing to pay Broadmoor amounts due. *See* Broadmoor Compl. ¶¶11–94. Broadmoor also alleged that Ms. Morgan executed a guaranty for Mirus Partners, and that Mirus Partners had breached that guaranty. *Id*., ¶¶95–101.

---

[1] The "Broadmoor Litigation" refers to the matter *Broadmoor, LLC v. Mirus New Orleans, LLC, et al.*, No. 2:18-cv-09064 (E.D. La. filed Sept. 28, 2018).

[2] *See* Broadmoor Litigation, ECF No. 1 (filed Sept. 28, 2018) ("Broadmoor Compl."), ¶11 *et seq*. ("Mirus is the owner/developer of a project known as 'Village of Versailles,' which is located in Orleans Parish, State of Louisiana (the 'Project'). The Project was financed through a loan with Bellwether insured by HUD through its § 221(d)(4) mortgage insurance program.").

As to Bellwether, Broadmoor alleged that Bellwether failed to comply with certain Project agreements. *Id*., ¶¶110–123. Broadmoor asserted claims for "breach of the Agreement"[3] for Bellwether's nonpayment of amounts due, *id*., ¶¶110–114, and for Bellwether's failure to "ensure that Mirus complied with its obligations" related to the Project, *id*., ¶¶115–123. Broadmoor alleged that "Bellwether served as the lender for the Project, who was a signatory on the HUD-insured mortgage and other closing documents required to finance the construction of the Project." *Id*., ¶116. Broadmoor contended that, despite repeated requests to Bellwether, Bellwether failed to compel Mirus to comply with the terms of the Agreement by failing to ensure Mirus made certain payments to Broadmoor. *Id*., ¶120. Broadmoor also contended that it was a "third-party beneficiary to the Project documentation, including the Building Loan Agreement, the Mortgage, and any other agreements or contracts entered into by the Defendants [including Mirus and Bellwether] in relation to the Project." *Id*., Prayer for Relief, ¶2; *id.*, ¶¶129, 130, 147.

Broadmoor also asserted claims against CREA, in part, for breaching documentation that obligated CREA to ensure Mirus complied with its obligations, *id*., ¶¶102–109, and asserted claims against HUD, *id*., ¶¶124–140. Broadmoor also asserted a claim for declaratory relief "declaring the rights and obligations of defendants Mirus, Mirus Partners, CREA, Bellwether, and HUD under the respective Project documents, including, but not limited to, the Agreement, the Building Loan Agreement, the Mortgage, the applicable HUD guidelines, and federal law." *Id*., ¶148.

Mirus filed an answer and counterclaim for breach of contract against Broadmoor. Broadmoor Litigation, ECF No. 15 (filed Nov. 20, 2018). Bellwether filed an answer and

---

[3] Broadmoor broadly defined the "Agreement" in its Complaint as including all Project-related documentation, including the Construction Contract and related Project documents. Broadmoor Compl. ¶13.

{N3839389.1} 4

asserted various defenses, and also sought fees, costs, and other relief. *Id.*, ECF No. 22, pp. 1–2, 18 (filed Dec. 14, 2018) (asserting affirmative defenses, and seeking fees, costs, and other relief). CREA also filed an answer and asserted various defenses, and also sought fees, costs, and other relief. *Id.*, ECF No. 18, pp. 50–51 (filed Dec. 3, 2018) (asserting affirmative defenses, and seeking fees, costs, and other relief).

> B.   **On March 25, 2019, Bellwether filed a Joint Stipulation of Dismissal with Prejudice in the Broadmoor Litigation.**

On March 25, 2019, Bellwether filed a joint "Stipulation of Dismissal with Prejudice" in the Broadmoor Litigation, which was signed by counsel for all parties, including Bellwether, and which stipulated:

> The parties to this action, acting through counsel, and pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), hereby stipulate, in consideration of a negotiated settlement, to the ***Dismissal With Prejudice of this action***, including all claims and counterclaims stated herein against all parties, with each party to bear its own attorney's fees and costs, provided, however, that ***this stipulation shall not resolve, apply to, or otherwise affect CREA Corporate Tax Credit Fund 40, LLC's claim*** for attorneys' fees, costs and expenses against Mirus New Orleans, LLC, Mirus Partners, Inc, and their guarantors, representatives, successors or assigns.

Broadmoor Litigation, ECF. No. 30 (emphasis added). The dismissal of the action was "with prejudice," and specifically reserved CREA's right to seek specified relief against Mirus. The Stipulation of Dismissal with Prejudice ***did not reserve any relief for Bellwether***. The Stipulation of Dismissal with Prejudice was signed by, and was filed and served by, counsel for Bellwether in the instant action.

II.   **BELLWETHER'S COMPLAINT**

On May 13, 2019, nearly two months after the Stipulation of Dismissal with Prejudice, Bellwether filed its Complaint against Mr. Jaye and Ms. Morgan—but not the loan recipient,

Mirus—alleging that Mirus breached certain payment obligations related to the Project, specifically under the Extension Fee Agreement.[4] The Extension Fee Agreement was executed by Mr. Jaye and Ms. Morgan on behalf of Mirus, and also by each individually, and contemplates certain payments by Mirus to Bellwether in connection with the Project and Loan in the event that Final Endorsement did not occur by August 31, 2018 (a month before the Broadmoor Litigation had been filed). Doc. 1-1. The Extension Fee was executed on July 1, 2016, in connection with the Note and other Loan documents that were the subject of the Broadmoor Litigation. Doc. 1, ¶10.

Bellwether alleges that Mirus paid extension fees owed to Bellwether in September 2018 and October 2018. Bellwether claims that Mirus owed, but did not pay, extension fees that became due and owing during the course of the Broadmoor Litigation—each on November 1, 2018, December 1, 2018, January 1, 2019, February 1, 2019, and March 1, 2019.[5] The Stipulation of Dismissal with Prejudice in the Broadmoor Litigation was filed on March 25, 2019, after the alleged nonpayment under the Extension Fee Agreement. Settlement and Final Endorsement of the Loan occurred on March 22, 2019. Doc. 1, ¶29.

Bellwether does not name as a defendant Mirus, the principal obligor under the Extension Fee Agreement. Instead, Bellwether named as defendants Mr. Jaye and Ms. Morgan, as owners of Mirus.[6] Bellwether attaches to its Complaint the July 1, 2016 Mortgage Note and the July 1, 2016 Extension Fee Agreement. Docs. 1-1 and 1-2.

---

[4] In addition to omitting the loan recipient, Mirus, as a party, Bellwether also omitted mention of the Broadmoor Litigation to which Bellwether and Mirus were both parties.

[5] When Bellwether filed its answer in the Broadmoor Litigation, ECF No. 22 (filed Dec. 14, 2018), two of these payments were past due. All five were past due when the Stipulation of Dismissal with Prejudice was filed on March 15, 2019.

[6] *See* Doc. 1, ¶16 ("The Obligors [Mr. Jaye and Ms. Morgan] are the individual owners of the Borrower entity [Mirus]."); *id.*, ¶7 ("At all relevant times, Obligors [Mr. Jaye and Ms. Morgan] have owned a directed or indirect interest in Borrower [Mirus] and stand to derive a substantial benefit from the Loan").

## LEGAL STANDARD

I.  *RES JUDICATA* AND CLAIM PRECLUSION ARE PROPERLY CONSIDERED ON A 12(B)(6) MOTION TO DISMISS IN THIS CASE.

"Dismissal under Rule 12(b)(6) on res judicata grounds is appropriate when the elements of res judicata are apparent on the face of the pleadings." *Murry v. GSA*, 553 Fed. Appx. 362, 364 (5th Cir. 2014) (granting 12(b)(6) motion to dismiss on claim preclusion) (citing *Kan. Reinsurance Co. v. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)); *Dean v. Miss. Bd. of Bar Admissions*, 394 F. App'x 172, 175 (5th Cir. 2010) (same). *See also McZeal v. MidSouth Nat'l Bank, NA*, No. 2:15-CV-02315, 2017 U.S. Dist. LEXIS 6418, at *16 (W.D. La. Jan. 13, 2017) (dismissing claims barred by res judicata on 12(b)(6) motion; "By taking judicial notice of other court proceedings … the court finds that the elements of *res judicata* require no further factual development and are apparent on the face of [the] amended complaint. Therefore, the court will consider whether the claims are barred by *res judicata* in the defendants' Motion to Dismiss."). In deciding the instant motion, the Court should take judicial notice of the prior court proceedings. *Id*. at *10-11 ("the court **must** take notice of a fact if 'a party requests it and the court is supplied with the necessary information.'") (emphasis original) (citing Fed. R. Evid. 201(c)(2)). Additionally, the Court may consider "uncontested documents referred to in the pleadings … even when these documents are not physically attached to the complaint." *Chauvin v. State Farm Fire and Cas. Co.*, 450 F.Supp.2d 660, 662-63 (E.D. La. 2006); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) ("Although they did not … physically attach them to their complaint, we can take into account the contents of the Letter Agreement and the Opinion Letters on appeal."); *Meyers v. Textron, Inc.*, 540 Fed. App'x 408, 409 (5th Cir. 2013) (district courts may consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial

notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.").

The Court has emphasized the importance of applying *res judicata* to relieve parties of the cost and vexation of multiple lawsuits and to conserve judicial resources:

> The United States Supreme Court has articulated the importance of the application of *res judicata* and demands a "rigorous application of *res judicata*" recognizing "no general equitable doctrine ... which countenances an exception" and has further stated that "the doctrine of *res judicata* serves vital public interests beyond any individual judge's ad hoc determination of the equities of a particular case. There is simply 'no principle in law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." …. The Supreme Court has noted that *res judicata* serves to "relieve parties of the cost and vexation of multiple lawsuits [and to] conserve judicial resources."

*Conwill v. Greenberg Traurig, L.L.P.*, No. 11-0938, 2012 U.S. Dist. LEXIS 140197, at *11-13 (E.D. La. Sep. 28, 2012) (citations omitted).

## DISCUSSION

### I.   CLAIM PRECLUSION BARS BELLWETHER'S CLAIM IN THIS CASE.

"[T]he doctrine of res judicata … bars the litigation of claims that were previously litigated or could have been raised in an earlier suit." *Murry v. GSA*, 553 F. App'x 362, 364 (5th Cir. 2014) (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) ("it is black-letter law that res judicata, by contrast to narrower doctrines of issue preclusion, bars all claims that were or **could have been** advanced in support of the cause of action on the occasion of its former adjudication … not merely those that were adjudicated.") (emphasis original)).

The four elements of *res judicata* are whether: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of

action was advanced or could have been advanced in the prior action. *Murry*, 553 F. App'x at 364 (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

      A.      **First Element: Mirus and Defendants are in privity.**

For claim preclusion purposes, the parties to the later action need not be "formal or paper parties" to the earlier action; they need only be "persons whose interests [were] properly placed before the court" in the earlier action. *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984). Although Defendants were not formally named in the Broadmoor Litigation, they were owners of, and in privity with, Mirus, which was omitted from this suit despite being the principal obligor. *Res judicata* applies where the parties in the second suit are in privity with the parties in the first suit. *Frank C Minvielle LLC v. Atl. Ref. Co*, 337 F. App'x 429, 435 (5th Cir. 2009) (citing *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005)); *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 173 (5th Cir. 1992) ("[A]ny attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine res judicata."). "[T]he concept of privity has continually been recognized by the Fifth Circuit Court of Appeals as a basis for extending res judicata to a nonparty." *United States ex rel. Kennard v. Comstock Res., Inc.*, No. 9:98-CV-266-TH, 2009 U.S. Dist. LEXIS 24753, at *20-21 (E.D. Tex. Mar. 23, 2009) (citations omitted). Privity is "a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Id*. Nonparty preclusion may be justified based on a variety of preexisting substantive legal relationships between the person to be bound and a party to the judgment, such as preceding and succeeding owners of property and assignee and assignor. *Id*. (citing *Taylor v. Sturgell,* 128 S. Ct. 2161, 2172 (2008). The Fifth Circuit has held that privity exists for *res judicata* purposes where the non-party controlled the prior litigation and where the non-party's interests were

adequately represented by a party to the original suit. *Davis v. Gusman*, No. 09-7195, 2010 U.S. Dist. LEXIS 41550, at *26 (E.D. La. Apr. 13, 2010) (citing *Dilworth v. Vance*, 95 F.3d 50, 1996 WL 457425, at *1 (5th Cir. 1996)). *See also Peck v. Asset Mgmt. Assocs., LLC*, Civil Action No. 3:17-CV-2923-N, 2018 U.S. Dist. LEXIS 119683, at *16 (N.D. Tex. July 18, 2018) (holding that the guarantors were in privity with debtor for purposes of claim preclusion).

Here, privity between Mirus and Defendants is evident on the face of Bellwether's Complaint. *See* Doc. 1, ¶16 ("The Obligors [Mr. Jaye and Ms. Morgan] are the individual owners of the Borrower entity [Mirus]."); *id.*, ¶7 ("At all relevant times, Obligors [Mr. Jaye and Ms. Morgan] have owned a direct or indirect interest in Borrower [Mirus] and stand to derive a substantial benefit from the Loan"). Thus, Defendants, despite not being formally named in the Broadmoor Litigation, controlled that proceeding on behalf of Mirus as owners of Mirus, and their interests as owners of Mirus were adequately represented. Bellwether's own allegations establish that the interests of Mirus and of Defendants are "sufficiently close to afford application of the principle of preclusion." *Comstock*, 2009 U.S. Dist. LEXIS 24753, at *20-21. Accordingly, because Mirus and Defendants are in privity, Bellwether is barred from asserting an action against Defendants to the same extent as it would be barred from asserting an action against Mirus. *See Daigle v. Cimarex Energy Co.*, 333 F. Supp. 3d 604, 624 (W.D. La. 2018) ("Cimarex and CRI, as the agent, were liable in solido …. The court finds that there is privity here as CRI was the virtual representative of Cimarex because their interests were closely aligned"). The first element is satisfied.

B.  **Second and Third Elements: The judgment in the prior action was rendered by a court of competent jurisdiction, and the prior action was concluded to a final judgment on the merits.**

The second element—whether the judgment in the prior case was rendered by a court of competent jurisdiction—is clearly satisfied.[7] The third element—whether there has been a final judgment on the merits, is also satisfied. "[A] stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, ***normally constitutes a final judgment on the merits which bars a later suit*** …." *Mongrue v. Monsanto Co.,* 98-2531, 2001 U.S. Dist. LEXIS 15586, at *10 (E.D. La. Sep. 27, 2001) (citing *Astron Industrial Associates, Inc. v Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir. 1968)) (emphasis added). "[W]hen the parties voluntarily agreed to a dismissal, under Federal Rule of Civil Procedure 41(a)(1)(ii) and under the case law of this circuit, any further actions by the court were superfluous." *United States v. Kellogg* (In re W. Tex. Mktg. Corp.), 12 F.3d 497, 501 (5th Cir. 1994) (citing *Williams v. Ezell*, 531 F.2d 1261, 1264 (5th Cir. 1976) (district court lacks power to act once plaintiff files a valid Rule 41(a)(1) motion)).

The only exception applies when the "rendering court explicitly reserves an issue or claim for subsequent proceedings":

> The United States Supreme Court and the United States Fifth Circuit have clearly stated that "a final judgment on the merits of an action ***precludes the parties or their privies from relitigating issues that were or could have been raised in that action***." Therefore, *res judicata* applies not only to claims raised in *Conwill I*, but also to those ***that could have been raised but were not***. Nevertheless, the Fifth Circuit has identified a narrow exception which allows a plaintiff to return to court regarding the same set of facts "on specified parts of the claim or cause of action that was advanced in the first action" when the "rendering court ***explicitly reserves an issue or claim for subsequent proceedings***."

---

[7] Bellwether admitted the existence of diversity jurisdiction in the Broadmoor Litigation (ECF No. 22, ¶3, filed Dec. 22, 2018).

{N3839389.1}                                11

*Conwill v. Greenberg Traurig, L.L.P.*, No. 11-0938, 2012 U.S. Dist. LEXIS 140197, at *11-13 (E.D. La. Sep. 28, 2012) (citations omitted) (emphasis added).

Here, the March 25, 2019 "Joint Stipulation of Dismissal with Prejudice" in the Broadmoor Litigation,[8] which was signed by counsel for all parties, including Bellwether, constitutes a final judgment on the merits as to the parties or their privies as to all claims that were or could have been raised, with only one express exception: CREA's explicit reservation of its right to seek relief against Mirus. The Stipulation of Dismissal with Prejudice *did not reserve any relief for Bellwether—against Mirus or otherwise*. The Stipulation of Dismissal with Prejudice was signed by, and was filed and served by, counsel for Bellwether in the instant matter. The Stipulation of Dismissal with Prejudice thus constitutes a final judgment on the merits as to Bellwether, Mirus, or their privies, barring further litigation on all claims that were or could have been raised. The second and third elements are satisfied.

    **C.**    **Fourth Element: Bellwether's claim is based on the same "series of transactions" and "nucleus of operative facts" as the Broadmoor Litigation, and could have been asserted therein or reserved.**

To determine whether the fourth element is met, the Fifth Circuit has adopted the "transactional test" of the Restatement (Second) of Judgments, § 24. *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 934 (5th Cir. 1999); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870-71 (5th Cir. 1984). Thus, the critical inquiry is whether the two actions under consideration are based on "the *same nucleus of operative facts*." *Southmark Corp.*, 163 F.3d at 934 (emphasis original) (*citing In re Baudoin*, 981 F.2d 736, 743 (5th Cir. 1993); *In re*

---

[8] The Stipulation of Dismissal with Prejudice provided: "The parties to this action, acting through counsel, and pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), hereby stipulate, in consideration of a negotiated settlement, to the Dismissal With Prejudice of this action, including all claims and counterclaims stated herein against all parties, with each party to bear its own attorney's fees and costs, provided, however, that this stipulation shall not resolve, apply to, or otherwise affect CREA Corporate Tax Credit Fund 40, LLC's claim for attorneys' fees, costs and expenses against Mirus New Orleans, LLC, Mirus Partners, Inc, and their guarantors, representatives, successors or assigns." Broadmoor Litigation, ECF No. 30 (filed March 25, 2019).

*Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)). The preclusion includes all rights to remedies "with respect to all or any part of the transaction, or **series of connected transactions**, out of which the action arose." *Southmark Props.*, 742 F.2d at 871 (emphasis original) (quoting Restatement (Second) of Judgments § 24(1)).

"The rule is that res judicata 'bars all claims that were or **could have been** advanced in support of the cause of action on the occasion of its former adjudication … not merely those that were adjudicated." *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990) (emphasis original). "The critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding." *Id. at* 1146 n.28. As the Fifth Circuit in *In re Howe* explained:

> Under the transactional test, the same action for res judicata purposes includes all the remedial rights of the plaintiff against the defendant **growing out of the relevant transaction** (**or series of connected transactions**). A party may not avoid the preclusive effect of res judicata by asserting a new theory or a different remedy. The **nucleus of facts defines the claim rather than the legal theory posed or recovery sought**.

*Id*. at 1140 n.10 (emphasis added). This test has a **much broader preclusive effect** than the test for issue preclusion. *Murry v. GSA*, 553 F. App'x 362, 364 (5th Cir. 2014) (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) ("it is black-letter law that res judicata, by contrast to narrower doctrines of issue preclusion, bars all claims that were or **could have been** advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated.") (emphasis original)). It has been long acknowledged that the federal law of *res judicata* establishes that a judgment in a prior suit bars a subsequent cause of action not only as to all matters actually litigated in the first suit but also as to all issues or causes of action that **could have been litigated in light of the facts underlying the first action**. *Matter of West Texas Marketing Corp.*, 12 F.3d 497, 501 (5th Cir. 1994) ("Res

judicata operates to bar any claim which **could have been brought** in the previous action.") (emphasis added); *Pickens v. Lockheed Corp.*, 990 F.2d 1488, 1489 (5th Cir. 1993) (noting claims barred by *res judicata* because they "either **could have been brought** in the many previous proceedings or they were brought and ultimately rejected.") (emphasis added); *Langston v. Insurance Company of North America*, 827 F.2d 1044, 1047-48 (5th Cir. 1987) (noting res judicata barred all claims that were or **could have been brought** in the original suit) (emphasis added). *See also Southmark Props.*, 742 F.2d at 871 ("Because appellants' present claim and the prior judgment involved the same principal transaction, appellants' claim is barred by *res judicata*"). "[A]ny attempt by the parties or those in privity with them to relitigate any of the matters that were raised *or could have been raised* therein is barred under the doctrine res judicata." *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 173 (5th Cir. 1992) (quoting *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972)) (emphasis original); *Conwill v. Greenberg Traurig, L.L.P.*, No. 11-0938, 2012 U.S. Dist. LEXIS 140197, at *11-13 (E.D. La. Sep. 28, 2012) ("*res judicata* applies not only to claims raised … but also to those that **could have been raised** but were not") (emphasis added).

Here, Bellwether's claim is based on the same "series of connected transactions" as the Broadmoor Litigation. Both are based on the Project, the Loan, and the obligations of the parties under the Project and Loan documents executed on or about July 1, 2016, which encompassed the Extension Fee Agreement. *Compare, e.g.*, Broadmoor Compl., ¶¶10, 116, 148:

> 10. Mirus is the owner/developer of a project known as "Village of Versailles," which is located in Orleans Parish, State of Louisiana (the "Project"). The Project was financed through a loan with Bellwether insured by HUD through its § 221(d)(4) mortgage insurance program.

> 116. Bellwether served as the lender for the Project, who was a signatory to the HUD-insured mortgage and other closing documents required to finance the construction of the Project.
>
> 148. Broadmoor requests an order declaring the rights and obligations of defendants Mirus, Minis Partners, CREA, Bellwether, and HUD under the respective Project documents, including, but not limited to, the Agreement, the Building Loan Agreement, the Mortgage, the applicable HUD guidelines, and federal law.

*with* Doc. 1 (Bellwether's Complaint), ¶¶6, 9, 10:

> 6. On or about July 1, 2016, Lender agreed to issue to Mirus New Orleans, LLC ("Borrower" or "Mortgagor"), a commercial mortgage loan in the principal amount of $31,552,100.00 (the "Loan") for the construction or renovation of Village of Versailles project, identified as FHA Project No. 064-35630 (the "Project").
>
> 9. The Loan was funded through the sale by the Lender of GNMA mortgage-backed securities and insured by the Secretary of Housing and Urban Development (hereinafter "HUD") pursuant to Section 221(4)(4) of the National Housing Act, as amended.
>
> 10. On or about July 1 2016, in consideration for and as a condition of the Loan, Obligors executed in favor of Lender an Extension Fee Agreement. See Ex, A.

Indeed, Bellwether pleads that the Extension Fee Agreement was executed "in consideration for and as a condition of the Loan." Doc. 1, ¶10. The Extension Fee Agreement was thus part of the Project financing and Loan transaction that was the subject matter of—and part of the "series of connected transactions" and "nucleus of operative facts" underlying—the Broadmoor Litigation. Although a claim under the Extension Fee Agreement was not asserted in the Broadmoor Litigation, such a claim was part of the same "series of connection transactions" and could have been asserted by Bellwether in the Broadmoor Litigation. *See Southmark Props.*, 742 F.2d at 871 ("Because appellants' present claim and the prior judgment involved the same

principal transaction, appellants' claim is barred by *res judicata*"). The pleadings in the two actions, and the Complaint in the instant action, firmly establish that they involve the same principal transaction.

Further, Bellwether acknowledges that all unpaid extension fees became due and owing before Bellwether itself filed the Stipulation of Dismissal with Prejudice in the Broadmoor Litigation on March 25, 2019. Doc. 1, ¶¶18–31 (alleging extension fees due and owing from September 1, 2018 through March 1, 2019). Thus, Bellwether voluntarily dismissed the Broadmoor Litigation, including all rights to remedies regarding the series of connected transactions out of which the action arose, without any reservation of rights (as CREA had reserved), on March 25, 2019, well after the alleged nonpayment had begun on November 1, 2018. Accordingly, as Bellwether's claim in the instant action is based on the same "series of transactions" and "nucleus of operative facts" as the Broadmoor Litigation, and could have been asserted therein, or reserved in the Stipulation of Dismissal with Prejudice, the fourth element is satisfied.

## CONCLUSION

For the foregoing reasons, Bellwether's Complaint is barred by claim preclusion, and should be dismissed with prejudice.

Respectfully submitted,

*/s/ Graham H. Ryan*
RICHARD J. TYLER (La Bar No. 1155)
GRAHAM H. RYAN (La. Bar No. 34070)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100
Telephone: (504) 582-8266
Fax: (504) 589-8266
Email: rtyler@joneswalker.com
Email: gryan@joneswalker.com
*Counsel for Christopher Jaye and Kristi Morgan*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed via the Court's electronic filing system this 29th day of July 2019.

                                            */s/ Graham H. Ryan*
                                            GRAHAM H. RYAN