BELLWETHER ENTERPRISE REAL ESTATE CAPITAL        CIVIL ACTION

v.                                                NO. 19-10351
                                                  c/w 19-13058[1]

CHRISTOPHER JAYE, ET AL.                         SECTION "F"

ORDER AND REASONS

Before the Court is Bellwether Enterprise Real Estate Capital's Rule 12(b)(6) motion to dismiss the counterclaims of Christopher Jaye and Kristi Morgan. For the reasons that follow, the motion is GRANTED, in part, as to Jaye and Morgan's stand-alone claim for attorney's fees, and DENIED, in part, as to all other claims.

**Background**

This contract dispute arises from a project to build affordable housing in New Orleans East.

Christopher Jaye and Kristi Morgan own a real estate development company called Mirus New Orleans. That company owns the Village of Versailles project — the first affordable housing development built in New Orleans East since Hurricane Katrina.

---

[1] This Order and Reasons applies to No. 19-10351 only.

To fund the project, Jaye, Morgan, and Mirus obtained a commercial mortgage loan from Bellwether. The loan is insured by the United States Department of Housing and Urban Development (HUD) and memorialized in a mortgage note and a building loan agreement. Under the building loan agreement, Bellwether agreed to advance the final loan proceeds upon HUD's final endorsement of the mortgage note for insurance.

As a condition of the loan, Jaye, Morgan, and Mirus entered into an extension fee agreement. The agreement required each to pay Bellwether a monthly "extension fee" if final endorsement did not occur by August 31, 2018:

> 1. <u>Extension Fees</u>. (a) Obligor agrees that in the event that Final Endorsement has not occurred on or before August 31, 2018, Obligor shall be liable and obligated to pay to Lender a monthly extension fee (the "<u>Extension Fee</u>") equal to (i) 1/8th of one percent (0.125%) of the original face amount of the FHA Mortgage Note for each "monthly Period" (as defined below) or portion thereof, commencing on September 1, 2018 and continuing through November 31, 2018 then increasing to (ii) 1/4th of one percent (0.25%) of the original face amount of the FHA Mortgage Note for each Monthly Period or portion thereof, commencing on December 1, 2018 and continuing until Final Endorsement. In the event that Final Endorsement shall not theretofore have occurred, Obligor shall be obligated to pay each such monthly Extension Fee in advance, fifteen (15) days prior to the commencement of the applicable Monthly Period; provided that Lender shall refund the last such monthly Extension Fee to Obligor in the event that Final Endorsement shall occur prior to the commencement of the applicable Monthly Period. Thereafter, there shall be no refund of the monthly Extension Fee. As used herein [sic] "<u>Monthly

Period" shall mean a period starting on the first day of a month and ending on the last day of that month.

Final endorsement did not follow; litigation did. In September 2018, the contractor on the project, Broadmoor, LLC, pointed to missed payments and sued Mirus, Bellwether, and others. See Civil Action No. 18-9064. The suit settled in March 2019, and final endorsement occurred around the same time.

Two months later, Bellwether sued Jaye and Morgan for breaching the extension fee agreement.[2] Bellwether says Jaye and Morgan owe it over $360,000 in unpaid extension fees and interest. Jaye and Morgan responded with counterclaims.

Jaye and Morgan counterclaimed against Bellwether for breach of contract and a declaratory judgment that the extension fee agreement is unenforceable. They also assert a stand-alone claim for attorney's fees "as provided by" the extension fee agreement.

As for the breach-of-contract counterclaim, Jaye and Morgan say Bellwether breached implied obligations arising from the extension fee agreement by "unreasonably and wrongfully delay[ing]" final endorsement. They say they gave Bellwether

---

[2] For reasons unknown to the Court, Bellwether did not sue Jaye and Morgan's company and co-obligor, Mirus. So, Mirus brought a separate suit against Bellwether, asserting claims essentially identical to the counterclaims Jaye and Morgan assert here. See Civil Action No. 19-13058.

3

everything it needed to proceed to final endorsement by August 31, 2018, but Bellwether failed to do so.

As for the declaratory-judgment counterclaim, Jaye and Morgan say the extension fee agreement is unenforceable because it provides for "liquidated penalty damages" that are "manifestly unreasonable." They add that Bellwether failed to place them in default, a prerequisite for recovering stipulated damages under Louisiana law.

The attorney-fee counterclaim is unadorned. Jaye and Morgan merely allege that they "are entitled to recover" attorney's fees "as provided by the parties' agreement and under Louisiana law."

Now, Bellwether moves to dismiss under Rule 12(b)(6). It first contends that the breach-of-contract counterclaim fails because Jaye and Morgan do not identify a contractual duty it breached. It next contends that the declaratory-judgment counterclaim fails because Jaye and Morgan fail to allege facts showing that the extension fee agreement is unenforceable. It finally contends that the attorney-fee counterclaim fails because the extension fee agreement does not contain a provision allowing Jaye and Morgan to recover attorney's fees.

4

I.

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A party may move for dismissal of a complaint that fails this requirement. See FED. R. CIV. P. 12(b)(6). Such motions are rarely granted because they are viewed with disfavor. Leal v. McHugh, 731 F.3d 405, 410 (5th Cir. 2013) (quoting Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." Thompson v. City of Waco, Tex., 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). Conclusory allegations are not well pleaded and, consequently, are not accepted as true. See Thompson, 764 F.3d at 502-03 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To overcome a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible if it contains "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). But it must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 555. Ultimately, the Court's task is "to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Thompson, 764 F.3d at 503 (citation omitted).

II.

Jurisdiction is based on diversity, so the Court applies Louisiana "substantive" law. See Boyett v. Redland Ins. Co., 741 F.3d 604, 607 (5th Cir. 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Because Louisiana choice-of-law rules are "substantive," the Court applies them here. See Weber v. PACT XPP Tech., AG, 811 F.3d 758, 770 (5th Cir. 2016) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). Louisiana's choice-of-law rules require the Court to honor a contractual choice-of-law provision, except to the extent the law chosen "contravenes the public policy of the state" whose law would otherwise apply. LA. CIV. CODE art. 3540.

6

Section 5(d) of the extension fee agreement contains a choice-of-law provision; it calls for the application of Louisiana contract-interpretation law. Neither side contends that the application of Louisiana law "contravenes the public policy of the state" whose law would otherwise apply. LA. CIV. CODE art. 3540. Accordingly, the Court honors the parties' choice and applies Louisiana law to interpret the extension fee agreement.

### III.

Bellwether first contends that Jaye and Morgan fail to state a breach-of-contract counterclaim. Under Louisiana law, a breach-of-contract claim has three elements: "'(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee.'" IberiaBank v. Broussard, 907 F.3d 826, 835 (5th Cir. 2018) (quoting Favrot v. Favrot, 1108-09, pp. 14-15 (La. App. 4 Cir. 2011); 68 So. 3d 1099, 1108-1109).

### A.

Bellwether says Jaye and Morgan fail to state a breach-of-contract counterclaim because they fail to allege an obligation arising from the extension fee agreement. Jaye and Morgan rejoin that Bellwether had an implied obligation not to do anything to

7

prevent the suspensive condition of final endorsement from occurring. The Court agrees.

An obligation is "conditional" if it depends on an "uncertain event." LA. CIV. CODE art. 1767. It is "suspensive" if it "may not be enforced until the uncertain event occurs." Id. Louisiana law regards a suspensive condition as "fulfilled" when "it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." LA. CIV. CODE art. 1772.

Civil Code Article 1772 embraces a "frustration" or "prevention of performance" principle: One contracting party has an implied obligation not to do anything that prevents the other from performing his obligation. Orleans Parish Sch. Bd. v. Lexington Ins. Co., 2012-1686, p. 16 (La. App. 4 Cir. 6/5/13); 118 So. 3d 1203, 1216 (citing In re Crutcher-Tufts Res., Inc., 504 F.3d 535, 542 (5th Cir. 2007)). The principle flows from "the premise [that] one should not be able to take advantage of his own wrongful act." Gibbs Const. Co. v. Thomas, 500 So. 2d 764, 766 (La. 1987). It applies to both obligor and obligee. LA. CIV. CODE art. 1772 cmt. a.

If the obligee's fault prevents a suspensive condition from becoming "fulfilled," the obligor may sue for damages. See LA. CIV. CODE art. 1772 cmt. c; 5 LA. CIV. L. TREATISE, Law of Obligations § 5.9 (2d ed.). The obligee conceptually has breached his implied contractual obligation. See LA. CIV. CODE art. 2054; Certain

8

Underwriters at Lloyd's, London v. Sea-Lar Mgmt., Inc., 2000-1512, p. 8 (La. App. 4 Cir. 5/9/01); 787 So. 2d 1069, 1076.

Here, Jaye and Morgan plausibly allege that Bellwether breached an implied obligation arising from the extension fee agreement. That agreement conditions Jaye and Morgan's obligation to pay Bellwether an extension fee on an uncertain event: the failure of final endorsement by August 31, 2018. That event is a suspensive condition; Bellwether had a Civil Code Article 1772-derived obligation not to prevent it from occurring. See Orleans Parish Sch. Bd., 118 So. 3d at 1216; Gibbs Const. Co., 500 So. 2d at 766. Jaye and Morgan allege that Bellwether breached that implied obligation by wrongfully preventing final endorsement from occurring within specified periods. They have stated a claim.

B.

Bellwether next contends that Jaye and Morgan fail to state a breach-of-contract counterclaim because the Federal Housing Administration Multifamily Program Closing Guide (HUD Guide) — a document central to the counterclaim — refutes their allegations. According to Bellwether, the terms of the HUD Guide prohibited final endorsement during the earlier litigation between Mirus and Broadmoor. Bellwether says it was that litigation — not its misconduct — that delayed final endorsement. Jaye and Morgan respond that compliance with the HUD Guide is a fact question ill-

9

suited for Rule 12 resolution. They add that the HUD Guide allows for final endorsement despite a contractor dispute; so, they say, Bellwether cannot attribute the delay to the HUD Guide.

The Court may consider the HUD Guide because it is part of the motion to dismiss, referenced in the counterclaims, and central to the breach-of-contract counterclaim. See Walker v. Beaumont Ind. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019) (citing Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004)).

Section 1.17(A) of the HUD Guide contemplates delays caused by litigation involving a borrower and a contractor:

> A. Disputes. Occasionally, Borrower and the general contractor may have disputes regarding change orders, the quality or cost of the construction work, or the timing of payments therefore [*sic*]. This may delay final closing. If Borrower and the general contractor enter into arbitration, litigation, or both, the delay may be excessive. It may be impossible to reach agreement in order to complete final closing. Such delays may cause Lender and Borrower to ask HUD to finally endorse the Note even without the full participation of the general contractor, because the cost of continuing to incur extension or other fees and Lender's need to convert the underlying financing of the mortgage loan to permanent status.

Section. 1.17(B) of the HUD Guide contains a procedure for final endorsement despite such litigation:

> B. Closing Without General Contractor. If both the HUB Director and HUD Closing Attorney, each in his or her own discretion, agree, the parties may proceed to final closing without the participation of the general contractor if the following conditions are met:

1. Cost certification must have been satisfactorily completed by all parties required [*sic*] subject to this requirement.
2. The remaining mortgage loan proceeds must be placed in escrow pending the outcome of the dispute.
3. The title company must issue affirmative title insurance coverage over any liens that are in place related to the dispute.
4. There must be a mechanism in place for eventual resolution of the dispute or termination of the escrow that is satisfactory to HUD, such as litigation that does not involve HUD.

Applying these provisions to the well-pleaded allegations of Jaye and Morgan's counterclaim, the Court cannot conclude that the Broadmoor litigation — rather than Bellwether's alleged misconduct — delayed final endorsement. To so hold would require resolution of factual disputes bearing on the requirements outlined in Section 1.17(B); that is not the Court's task at this Rule 12(b)(6) stage. Accordingly, on this record, the Court finds that the terms of the HUD Guide do not refute the allegations of Jaye and Morgan's breach-of-contract counterclaim.

C.

Bellwether next contends that Jaye and Morgan's allegations are conclusory and therefore insufficient to state a breach-of-contract counterclaim. The Court disagrees.

Jaye and Morgan allege that Bellwether breached implied obligations arising from the extension fee agreement by "unreasonably and wrongfully delay[ing] the occurrence of final

11

endorsement." They add that the delay was "without justification" and that they "press[ed] Bellwether to proceed to final endorsement, but Bellwether failed to do so for reasons that were never explained." These factual allegations are not of "'the-defendant-unlawfully-harmed-me'" generic variety; they are sufficiently specific to give Bellwether "'fair notice of what the claim is and the grounds upon which it rests.'" Wooten v. McDonald Transit Assocs., Inc., 788 F.3d 490, 498-99 (5th Cir. 2015) (quoting Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555). Accepted as true and viewed in Jaye and Morgan's favor, the allegations suffice to state a breach-of-contract counterclaim against Bellwether.

IV.

Bellwether next contends that Jaye and Morgan fail to state a counterclaim for a declaratory judgment that the extension fee agreement is unenforceable. The Declaratory Judgment Act empowers a federal court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Jaye and Morgan invoke the Declaratory Judgment Act and seek a declaration that the extension fee agreement is unenforceable because it

12

purports to impose "liquidated penalty damages" that are "neither reasonable nor compensatory."

A.

Bellwether says Jaye and Morgan fail to allege facts establishing that the extension fee agreement is unenforceable. Jaye and Morgan rejoin that they adequately allege that the agreement is unenforceable because it does not "reasonably approximate" damages. The Court agrees.

In Louisiana, "[p]arties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation." La. Civ. Code art. 2005. A court cannot modify stipulated damages "unless they are so manifestly unreasonable as to be contrary to public policy." La. Civ. Code art. 2012. And "[a]n obligee may not avail himself of a clause stipulating damages for delay unless the obligor has been put in default." La. Civ. Code art. 2010.

Stipulated damages "should reasonably approximate the obligee's loss in the event of a breach and should not be penal." Keiser v. Catholic Diocese of Shreveport, Inc., 38,797, p. 9 (La. App. 2 Cir. 8/18/04); 880 So. 2d 230, 236 (citing Am. Leasing Co. of Monroe v. Lannon E. Miller & Son, Gen. Contracting, Inc., 469 So. 2d 325 (La. Ct. App. 2 Cir. 1985)). To determine the reasonableness of a stipulated damages provision, the Court

13

considers "whether the parties attempted to approximate the actual damages in confecting the agreement." Keiser, 880 So. 2d at 236 (citing Carney v. Boles, 25,905 (La. App. 2 Cir. 9/21/94); 643 So. 2d 339).

Jaye and Morgan have stated a claim for a declaratory judgment that the extension fee agreement is unenforceable.[3] They allege that the agreement imposes "liquidated penalty damages" that are not compensatory and thus "manifestly unreasonable" under Civil Code Article 2012. The specific factual allegation that the stipulated damages are "not compensatory" — if accepted as true and viewed in Jaye and Morgan's favor — allows the Court to draw the reasonable inference that the agreement is unenforceable under Louisiana law.[4] See Keiser, 880 So. 2d at 236.

V.

Bellwether next contends that Jaye and Morgan fail to state a stand-alone claim for attorney's fees. Jaye and Morgan do not address the argument.

---

[3] They have also stated a claim for a declaratory judgment that, even if the agreement is enforceable, Bellwether is not entitled to stipulated damages because it failed to place them in default. See LA. CIV. CODE art. 2010.

[4] Whether the extension fee agreement is unenforceable depends on a fact question beyond the scope of Bellwether's motion: Did the parties attempt to "approximate" the actual damages in confecting the stipulated-damages provision of the extension fee agreement? See Keiser, 880 So. 2d at 236.

14

A.

In Louisiana, attorney's fees are "not allowed except where authorized by statute or contract." Sher v. Lafayette Ins. Co., 2007-2441, p. 18 (La. 4/8/08); 988 So. 2d 186, 201. In a breach-of-contract action like this one, attorney's fees are not recoverable "unless there is a specific provision therefor in the contract." Maloney v. Oak Builders, Inc., 235 So. 2d 386, 390 (La. 1970).

Jaye and Morgan fail to allege any basis ⎯ statutory or contractual ⎯ for recovering attorney's fees against Bellwether. So, the Court grants Bellwether's Rule 12(b)(6) motion as to the stand-alone claim for attorney's fees and dismisses the claim with prejudice. See, e.g., Shafiq v. Ochsner Health Sys., No. 18-8666, 2019 WL 1199755, at *9 (E.D. La. Mar. 14, 2019) (dismissing stand-alone claim for attorney's fees because the plaintiff failed to plead a statutory or contractual basis for recovering them).

VI.

Accordingly, IT IS ORDERED: that Bellwether's Rule 12(b)(6) motion to dismiss is GRANTED, in part, as to Jaye and Morgan's stand-alone claim for attorney's fees, and DENIED, in part, as to all other claims.

New Orleans, Louisiana, December 11, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE